UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD MEYER,

       Plaintiff,

                                                            File No. 2:14-CV-29

v.

                                                            HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

       Defendant.

_____/

## **OPINION**

This is a medical malpractice claim brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* Defendant has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and in the alternative for Summary Judgment under Fed. R. Civ. P. 56 (ECF No. 6). Plaintiff filed a Response (ECF No. 14) to which Defendant has filed a Reply (ECF No. 16). Having fully considered the arguments presented, the Court holds oral argument unnecessary for disposition of the motion.

At this stage, the Court need only answer one question: did Plaintiff's cause of action accrue more than two years before he filed an administrative claim. For the reasons, that follow, the Court finds that it did not, and will deny Defendant's motion.

**I.**

The operative facts in this case are undisputed. Plaintiff sets out a concise statement of these facts in his response brief and accompanying affidavit. (Pl.'s Resp. 3–12, ECF No. 14.) Additional facts are supplemented from the complaint and Defendant's brief. (Compl., ECF No. 1; Def.'s Br., ECF No. 7.) Plaintiff was born in 1942 and began smoking cigarettes at the age of five.

On January 3, 2007, he went to the Oscar G. Johnson Veterans Administration Medical Center in Iron Mountain, MI (VAMC) for a general physical. The examining physician, Dr. Scharffenberg, found Plaintiff to have decreased air entry into his lungs, hypertension, obstructive lung disease, and tobacco use disorder. Dr. Scharffenberg ordered a CT scan of Plaintiff's thorax to screen for lung cancer. Plaintiff had the CT scan on January 17, 2007. Another physician interpreted the scan and noted an abnormality on Plaintiff's lung. This physician recommended a follow-up CT scan in four months. Dr. Scharffenberg updated his January 3 progress note to reflect the result of the CT scan and the recommended follow up.

Plaintiff had his follow up appointment on April 4, 2007. He told a nurse that he was nervous and wanted to know the results of his January CT scan. When he met with Dr. Scharffenberg, however, he was neither provided the results of the scan, nor was he told a follow up scan was recommended.

Plaintiff returned to VAMC periodically over the next three years for routine care and treatment for his various ailments, including Chronic Obstructive Pulmonary Disease (COPD). At no time was the result of his CT scan discussed with him, nor was the recommendation for a follow up CT scan.

Finally, on August 3, 2010, Dr. Montante examined Plaintiff. He noted the results of the 2007 CT scan. Dr. Montante ordered a new CT scan to follow up on the 2007 CT scan. On August 11, 2010, a new CT scan was performed on Plaintiff. That scan revealed a progression of the abnormality on Plaintiff's lung that was consistent with malignancy. Plaintiff underwent further testing and on September 17, 2010, he was told he likely had lung cancer. Plaintiff was not advised that his 2007 CT scan revealed abnormalities.

By October 4, 2010, Plaintiff had become dissatisfied with his treatment at the VAMC. He therefore requested all his medical records from VAMC. The records were released to Plaintiff, and contained the radiology reports of his 2007 and 2011 CT scans. Plaintiff did not review his records, but rather surrendered them to his new physicians on October 25, 2010. Plaintiff continued to see his new physicians and was treated for his cancer over the next 18 months.

On May 9, 2012, the VAMC completed a Disclosure of Adverse Event with Plaintiff. The VAMC advised Plaintiff explicitly for the first time that his 2007 CT had shown an abnormality, that the recommended follow-up for another CT scan was four months, and that another CT scan had not been performed until 2010. Plaintiff filed a SF-95 form on December 20, 2012, informing the VAMC he was seeking damages from their alleged failure to timely diagnose his cancer.

## II.

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The general rule is that "'a tort claim accrues at the time of the plaintiff's injury[.]'" *Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009) (quoting *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). In the context of a medical malpractice case, a plaintiff's claim "accrues when he 'knows both the existence and the cause of his injury.'" *Amburgey v. United States*, 733 F.3d 633, 636 (6th Cir. 2013) (quoting *Kubrick*, 444 U.S. at 113). *Kubrick* therefore established an "inquiry-notice rule" for medical malpractice claims brought under the FTCA. *Amburgey*, 733 F.3d at 636.

Specifically, a medical malpractice claim accrues "when a plaintiff possesses enough information with respect to [his] injury that, '[h]ad [he] sought out independent legal and medical advice at that point, [he] should have been able to determine in the two-year period whether to file

3

an administrative claim.'" *Hertz*, 560 F.3d at 618 (quoting *McIntyre v. United States*, 367 F.3d 38, 53 (1st Cir. 2004)). Determining when a plaintiff has such knowledge is "necessarily fact-intensive." *Hertz*, 560 F.3d at 619.

When a plaintiff's claim of malpractice is predicated upon "a physician's failure to diagnose, treat, or warn" and that failure "results in the development of a more serious medical problem" identifying the injury and its cause is more difficult than when "affirmative conduct by a doctor inflicts a new injury." *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983). In such a case:

> the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.

*Id.* (emphasis in original).

Therefore, in a case involving failure to diagnose, treat, or warn, a plaintiff's cause of action accrues when he "becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition." *Id.*; *see also Harvey v. United States*, 685 F.3d 939, 948 (10th Cir. 2012) ("Before [Plaintiff's] misdiagnosis claim could accrue, he must have been aware—or through the exercise of reasonable diligence should have been aware—that the lack of proper treatment had caused his broken hand to develop into a more serious condition."); *Arroyo v. United States*, 656 F.3d 663, 669 (7th Cir. 2011) ("A plaintiff's claim accrues the first time the plaintiff knew, or a reasonably diligent person in the plaintiff's position, reacting to any suspicious circumstances of which he or she might have been aware, would have discovered that an act or omission attributable to the government could have

caused his or her injury.") Put another way, the statute of limitations "begins to run either when the government cause is known or when a reasonably diligent person . . . *reacting to any suspicious circumstances* of which he might have been aware would have discovered the government cause—whichever comes first." *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985) (emphasis added).

Defendant first argues that Plaintiff's claim accrued on April 4, 2007, when Plaintiff returned to the VAMC for his follow-up appointment. (Def.'s Br. 12, ECF No. 7.) At his January 3, 2007, appointment, Dr. Scharffenberg had urged Plaintiff to quit smoking and ordered a CT scan of his lungs to rule out cancer. Defendant argues that when the results of this scan were not given to Plaintiff at his April follow-up appointment, he was on inquiry notice of his injury. Defendant asserts that this argument is bolstered by the fact that Plaintiff told a nurse he was nervous at his follow-up and asked her about the results of the January 2007 CT scan.

Defendant alternately argues that Plaintiff's claim accrued in August 2010, when he was actually diagnosed with lung cancer. At that time, Dr. Montante finally ordered a follow-up CT scan that revealed a progression of Plaintiff's cancer. Plaintiff was given several additional diagnostic tests. Defendant argues that "[t]he very fact of the diagnosis, coupled with [Plaintiff's] knowledge that he had never received the results of the 2007 scan, put [Plaintiff] on inquiry notice of his claim and set the statute of limitations running." (Def.'s Br. 14, ECF No. 7.)

Finally, Defendant argues that at the very latest, Plaintiff's claim accrued on October 12, 2010, when the VAMC released his medical records to him. The records contained Dr. Scharffenberg's notes from the January 2007 CT scan noting the presence of an abnormality and the recommended follow-up. The records the VAMC gave Plaintiff also informed him that the cancer

was detected in 2007 and had progressed by the time of his second CT scan in 2010. Plaintiff admits that he never independently reviewed his medical records.

Plaintiff responds by arguing that his claim did not accrue until May 9, 2012, when the VAMC explicitly informed him that his cancer had been detected in 2007, but no follow-up treatment was given until 2010. Plaintiff cites a string of cases for the proposition that he "was justified in placing his trust and confidence in his medical care providers" and that because none of them told him he needed to be concerned about the results of his January 2007 CT scan, he relied on their silence and did not inquire about the results of the scan.

The cases Plaintiff cites are inapposite to his case. The plaintiffs in those cases either were injured by their physicians' affirmative actions, or they were assured by medical professionals that no injury had occurred at all. Here, however, Plaintiff's injury is that he was *not* told of an abnormal test result, causing his condition to worsen. Plaintiff therefore was injured by an act of *omission* and he cannot construe medical professionals' silence as to his 2007 CT result as an assurance that the result was normal.

Nevertheless, the Court cannot conclude in this case that a reasonable person in Plaintiff's position would have been on inquiry notice that he had been injured prior to May 2012. Although Plaintiff was "nervous" about his condition at his April 2007 appointment, it was not Plaintiff's duty to inquire about the results of his CT scan. Nor will the Court impute a duty to immediately inquire about doctor-caused injuries the moment Plaintiff was diagnosed with a disease. *See Arroyo*, 656 F.3d at 671 ("We reject the government's invitation to find that all reasonable persons who suffer injuries while under the care of medical professionals assume that their injuries can be attributed to shortcomings in the care they received. This court has previously considered whether the law

6

requires individuals to make this assumption and concluded that it does not, recognizing the 'ghoulish consequence[s]' that would follow from adopting such a rule.") (quoting *Drazan* 762 F.2d at 59).

Plaintiff undoubtedly became aware of "the development of a pre-existing problem into a more serious condition" on May 9, 2012, when the VAMC told him his cancer may have been detected in 2007 but not diagnosed until 2010. *See Augustine*, 704 F.2d at 1078. The Court cannot conclude, however, that before that time Plaintiff was in any meaningful way in possession of enough information to alert him to the need for independent legal or medical advice. *See Hertz*, 560 F.3d at 618.

In 2010, Plaintiff knew he had cancer and he knew he had a CT scan three years before. He had no way of knowing, however, that the CT scan had shown an abnormality. Nor did he know that in 2010 that Dr. Montante had reviewed the 2007 CT scan and determined that the abnormality had grown by 2010.

Plaintiff was given a copy of his medical records in 2010 when he left the VAMC to seek treatment elsewhere. The Court finds that this was a fortuitous event, and that a reasonable person in Plaintiff's position should not have been expected to read through those records to see if mistakes had been made in his care. In sum, Plaintiff was not on inquiry notice prior to May 9, 2012, that he had received a doctor-caused injury. Therefore his December 2012 administrative claim was timely and he is not barred from bringing suit.

Defendant brought the present motion under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 56. Although the standards for each differ, the gravamen of the argument is the same: Plaintiff failed to timely file his claim. Based on the undisputed facts, the Court concludes otherwise. Therefore, under

any of these rules, Defendant would not be entitled to the relief it seeks.

## III.

For the foregoing reasons, the Court finds that Plaintiff's claim was timely filed under 28 U.S.C. § 2401(b). Defendant's Motion to Dismiss or in the alternative for Summary Judgment will be denied.

The Court will issue an Order consistent with this Opinion.


Dated: <u>May 30, 2014</u>                                   /s/ Robert Holmes Bell                
                                                              ROBERT HOLMES BELL
                                                              UNITED STATES DISTRICT JUDGE